Harold T. Walker, Chief Counsel Unified Government of Wyandotte County/ Kansas City, Kansas Municipal Office Building, Room 961 701 North 7th Street Kansas City, Kansas 66101
Dear Mr. Walker:
You inquire whether the Kansas Expanded Lottery Act,[1] (KELA) requires that a lottery gaming facility manager applicant provide a resolution of endorsement and planning/zoning approval at the time the applicant files its application with the Kansas Lottery Commission (Commission) and whether a city or county is required to entertain a request for endorsement that does not comply with its endorsement process.
I. Does the KELA require that a lottery gaming facility managerapplicant provide a resolution of endorsement and planning/zoningapproval at the time the applicant files its application with theCommission? Answer: No
The Commission is charged with operating one lottery gaming facility in each of the four gaming zones in the state.[2] The Commission is the agency responsible initially for reviewing all proposed lottery gaming facility management contracts to ensure that each meets the requirements enumerated in the KELA.[3] The Commission is not restricted to approving just one management contract in each zone. Rather, it may approve multiple management contracts in each zone.[4]
Management contracts cannot be approved by the Commission unless the applicant meets certain financial and investment requirements[5] as well as certain other requirements related to the city or county in which the facility will be located. Specifically, the KELA provides, as follows:
 "A lottery gaming facility shall comply with any planning and zoning regulations of the city or county in which it is located. The executive director [of the Commission] shall not contract with any prospective lottery gaming facility manager for the operation and management of such lottery gaming facility unless such manager first receives any necessary approval under planning and zoning requirements of the city or county in which it is to be located."[6]
In addition to planning and zoning approval from the respective city or county, "any management contract approved by the Commission . . .shall [i]nclude a resolution of endorsement from the city governing body, if the proposed facility is within the corporate limits of a city, or from the county commission, if the proposed facility is located in the unincorporated area of the county."[7]
The KELA does not address when the planning/zoning approval and the endorsement resolution has to be provided to the Commission prior to approval. It simply prohibits the Commission from executing a contract with an applicant unless the latter has provided both items. As the Commission is charged with adopting procedures for approving lottery gaming facility management contracts,[8] it appears that the Legislature left it up to the Commission to determine at what point in the process these items would be required.
This interpretation is supported by the facility manager application itself which was devised by the Commission soon after the KELA became effective.[9] The application form requires the applicant to provide a copy of the planning and zoning approval and the resolution of endorsement.[10] However, "if said planning and zoning approval(s) or resolution of endorsement have not yet been obtained," the application provides that the applicant "set forth in detail the reason(s) they have not yet been obtained and the date by which the applicant anticipates obtaining such approval(s) or endorsement."[11] The application also inquires whether or not the resolution of endorsement has been received and, if not, the reasons why it hasn't been received.[12] Accordingly, it is our opinion that the KELA does not require that a lottery gaming facility manager applicant provide a resolution of endorsement or planning/zoning approval at the time the applicant files its application with the Commission.
II. Is a city or county required to entertain a request forendorsement that does not comply with its endorsement process? Answer:No.
You advise that an applicant[13] that was previously denied rezoning approval by the Unified Government (UG), which approval was a prerequisite to endorsement, has submitted a new application for rezoning in the hope that should approval be forthcoming, endorsement by the Unified Government would follow. You inquire whether the UG must entertain the anticipated endorsement request in light of the fact that the deadline for both land use submissions and endorsement requests has expired.
We have previously concluded that the KELA prescribes no procedure for endorsing a particular lottery gaming facility manager applicant.[14]
In the absence of statutory guidance, a city and county are free to exercise their extensive home rule powers and "determine their local affairs and government."[15] As the UG is considered to be both a county and a city of the first class,[16] it enjoys the benefits of both city and county home rule.
In exercising those powers in the context of gaming, the UG and two other municipalities established endorsement criteria for evaluating gaming facility proposals.[17] This criteria required compliance with zoning and planning regulations at the time of endorsement review by the respective government.[18] The UG then issued a Request for Proposal (RFP) for lottery gaming facility manager applicants with attendant deadlines for planning and zoning approvals and submission of completed proposals.[19] Those deadlines required planning and zoning documents be submitted by July 20, 2007 with endorsement proposals due by August 17, 2007.[20] Late proposals were not to be considered.[21] Clearly, in order to be considered for UG endorsement, all applicants had to have land use approvals in hand.
Our understanding is that the UG voted to affirm the planning commission's decision to deny the zoning application necessary to operate a lottery gaming facility submitted by the applicant in question here, thereby removing it from consideration for endorsement.[22] With land use proposals approved for four applicants, the UG considered their endorsement requests. After a public hearing on December 13, 2007, the UG endorsed three applicants.[23]
In light of the fact that the KELA dictates no procedure for endorsement and considering the extensive home rule powers of cities and counties, it is our opinion that it is within the discretion of each municipality to establish its endorsement criteria, including deadlines for submission of planning/zoning and endorsement requests. Implicit in the power to bestow an endorsement is the ability of a local governing body to determine whether the applicant has complied with the criteria and has done so in a timely manner. Accordingly, a city or county is not required to entertain a request for endorsement that does not comply with its endorsement process, including any attendant deadlines.
Sincerely,
 Stephen N. Six Attorney General
 Mary Feighny Deputy Attorney General
SNS:MF:jm
[1] K.S.A. 2007 Supp. 74-8733 et seq.
[2] K.S.A. 2007 Supp. 74-8734(a); 74-8702(f).
[3] K.S.A. 2007 Supp. 74-8734(d).
[4] K.S.A. 2007 Supp. 74-8736(b).
[5] K.S.A. 2007 Supp. 74-8734(g)(1)(2).
[6] K.S.A. 2007 Supp. 74-8734(o). Emphasis added.
[7] K.S.A. 2007 Supp. 74-8734(h)(10). Emphasis added.
[8] K.S.A. 2007 Supp. 74-8734(b).
[9] April 19, 2007. Winnebago Tribe of Nebraska v. Kline, 150 P.2d 892
(Kan. 2007). (Interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute entitled to judicial deference.)
[10] http://www.kslottery.com/ExpandedLotteryAct/GamingApplication_6_ 13_07.pdf, at 15. (Application for Lottery Gaming Facility Manager)
[11] Id. Emphasis added. The Application Review Procedures reiterate that an applicant only has to disclose when the applicant is expected to receive land use approval. http://www.kslottery.com/ExpandedLotteryAct/GamingApplication Procedure_4_30_07.pdf [Application Review Procedures for Lottery Gaming Facility Manager Contracts, § 3(d)(9)(e)].
[12] Id. at 26. While a December 13, 2007 addendum to the instructions amended the endorsement provision to require the applicant to disclose when the applicant was expected to receive a resolution of endorsement, this addendum simply reiterated what had always been present in the application form itself.
http://www.kslottery.com/ExpandedLotteryAct/Addendum%20to%20Gaming %20Application%20revised%2012-13-07.pdf at 3-4 (Addendum #1 to Application and Application and Review Procedures For Lottery Gaming Facility Manager).
[13] The applicant timely submitted its lottery gaming facility manager application to the Lottery Commission.
[14] Attorney General Opinion No. 2007-33.
[15] Kan. Const., Art. 12, § 5; K.S.A. 12-101; K.S.A. 19-101;19-101a.
[16] K.S.A. 12-345(l)(m).
[17] Interlocal Cooperation Agreement dated June 11, 2007, Exhibit A (Statement of Mutual Gaming Facility Criteria and Development Preferences) at § B(5).
[18] Id. at 3. Exhibit A at § B(5).
[19] RFP 27-345 for Destination Casino Developer for the Unified Government.
[20] Id. at Art. IV and Art. V, § 5.04. We understand that an amended RFP extended the planning/zoning submission deadline to July 25, 2007. John D. Petersen letter to Attorney General Six dated February 14, 2008, Exhibit B.
[21] Note 19 at Art. V, § 5.04.
[22] John D. Petersen letter to Attorney General Six dated February 14, 2008 at 4. The UG also affirmed the planning commission's denial of a zoning application submitted by another applicant.
[23] Resolution No. R-126-07.